**In re Paul S. HAAR, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 95–BS–140.**

District of Columbia Court of Appeals.

Argued Oct. 13, 1995.
Decided Dec. 7, 1995.

H. Clay Smith, Assistant Bar Counsel, Washington, DC, with whom Leonard H. Becker, Bar Counsel, was on the brief for petitioner.

Elizabeth J. Branda, Washington, DC, for the Board on Professional Responsibility.

Jacob Stein, Washington, DC, with whom Robert Bredhoff was on the brief, for respondent.

Before SCHWELB, KING, and REID, Associate Judges.

KING, Associate Judge:

Bar Counsel charged respondent, an attorney admitted to practice law in the District of Columbia, with improperly withdrawing funds from a client's trust account, in violation of Disciplinary Rule ("DR") 9–103(A)(2) (appropriations from trust account funds).[1] The hearing committee concluded, with one member dissenting, that respondent violated DR 9–103(A)(2) when he withdrew $4000 from his client's trust account as partial payment of his fee even though respondent's entitlement to the amount withdrawn was in dispute. The Board on Professional Responsibility ("Board") rejected the hearing committee's conclusion, finding that there was no "genuine" dispute with respect to respondent's entitlement to the funds he withdrew from his client's account.

The matter is before us on Bar Counsel's exception to the essentially unanimous[2] determination by the Board. The hearing committee's conclusion was based on its assessment of the credibility of the principal participants in this proceeding, the client and respondent. The Board did not resolve that credibility contest differently; it simply concluded that the hearing committee had misinterpreted the governing rule. We disagree with the Board's interpretation of the rule and, although the question of whether there was a dispute concerning respondent's entitlement to the amount withdrawn is a close one, we hold that respondent violated DR 9–103(A)(2). Accordingly, we remand to the Board for a recommendation as to the appropriate sanction.

## I.

Ms. Krishna Baldew hired respondent in June of 1988 to represent her in an employment dispute related to her termination from the United States Information Agency in Paramaribo, Suriname. There was no writ-ten fee agreement; however, Ms. Baldew paid an initial fee of $1000. Respondent claimed the $1000 payment was a retainer and that Ms. Baldew agreed to pay him at a rate of $150.00 per hour. The client maintained, however, that the $1000 payment was for the work performed in June and July of 1988, and that the agreed rate would be $120 per hour for any additional work performed from August 1988 forward.

Respondent negotiated a favorable settlement for Ms. Baldew which included expungement of any adverse employment records and compensation in the amount of $20,-000. In January of 1989, Respondent provided Ms. Baldew with a final statement of fees and expenses totaling $12,921.75: 92 hours at $150 per hour, plus $121.75 in expenses, less the $1000 retainer. More than half of the hours were expended in June and July, the period Ms. Baldew claims were covered by the $1000 initially paid. In a letter dated February 21, 1989, Ms. Baldew disagreed "with the amount charged" and offered to "settle ... at U.S. $4,000."

On March 30, 1989, Ms. Baldew met with respondent to discuss the amount of legal fees owed. Respondent testified that during that meeting Ms. Baldew agreed to pay $4000 in partial payment of the fee. In her own testimony, Ms. Baldew denied that any such agreement was reached. Further, in a letter to respondent dated May 3, 1989, she stated that she was "still awaiting [respondent's] amended specification of fees ... as was agreed during [their] meeting on March 30, 1989"; and upon receipt would review the fees "and settle the amount which is due to [respondent] if such is agreeable to [her]."

On May 16, 1989, respondent sent a letter to Ms. Baldew by airmail and telefax to her Suriname residence, proposing a reduction in his fees to resolve the dispute, and agreeing to accept the sum of $10,161.75. There was no mention in that letter, however, of any

---

1. At the time of respondent's conduct, attorney discipline in the District of Columbia was governed by our former Code of Professional Responsibility, which included DR 9–103(A)(2). Rule 1.15(a) of the new Rules of Professional Conduct contains a provision similar to DR 9–103(A)(2).

2. All members of the Board agreed except for one member, who did not participate. The hearing committee found a violation by a vote of two to one. The dissenting member of the hearing committee was not present during the testimony, but, after reading the hearing transcript, found respondent's client to be "an evasive and hostile witness and that she [was] not credible."

agreement regarding partial payment. In another letter sent the next day, May 17, 1989, also by airmail and telefax, respondent informed Ms. Baldew that he had received the settlement funds, and that a check for $3866 would be distributed to her. Respondent further advised that he would deposit the remaining settlement funds totaling $16,134 into a trust account, and stated that he "will" withdraw $4,000.00 "in partial payment for my services as this amount is undisputed per your February 21, 1989 letter and our March 30, 1989 meeting." Ms. Baldew did not respond to either the May 16 or May 17 letter. On May 24, 1989, respondent withdrew $4000 from the trust account containing Ms. Baldew's settlement funds. That withdrawal is the basis for Bar Counsel's charge.

On July 19, 1989, respondent sent a letter informing Ms. Baldew that he had withdrawn the $4000 "in partial payment of [his] legal fees." Respondent also stated in that letter that unless he received an objection from Ms. Baldew by July 31, 1989, he would withdraw an additional $6,161 as final settlement of the legal fees.

That proposal was unacceptable to Ms. Baldew who, in a written response dated July 26, 1989, reminded respondent that in her letter of February 21, 1989, she had "clearly state[d] that I agree with a fee of U.S. $4,000.00 as full and final settlement for all bills outstanding to this date and as such I do not agree with your suggestion to settle your legal fees as you suggested for U.S. $10,161.75 dollars." Ms. Baldew also demanded that respondent deposit $4000 back into her trust account.

In January of 1991, respondent obtained a default judgment against Ms. Baldew for legal fees totaling $12,921.75, plus interest and costs, in an action that he had filed on October 18, 1989. Subsequently, Ms. Baldew complained about respondent's withdrawal of the $4000 from the trust fund, and on August 12, 1993, Bar Counsel instituted these disciplinary proceedings.

## II.

The Board was obligated to accept the hearing committee's factual findings if those findings were supported by substantial evidence in the record, viewed as a whole. *In re Micheel,* 610 A.2d 231, 234 (D.C.1992). Similarly, this court is required to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." D.C.Bar R. XI, § 9(g); *see also In re Micheel,* 610 A.2d at 234. With these standards in mind, we turn to an examination of the applicable provision of the disciplinary code and its application to the facts presented here.

Disciplinary Rule 9–103(A)(2) of the Code of Professional Responsibility, which governed attorney discipline in the District of Columbia at the time of respondent's conduct, provided in pertinent part:

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

. . . .

(2) Funds belonging in part to a client and in part, presently or potentially to the lawyer or law firm must be deposited therein, *but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.*

(Emphasis added). The hearing committee and the Board disagree on the interpretation of the italicized language. Resolution of that disagreement turns on whether there was a dispute between Ms. Baldew and respondent concerning respondent's entitlement to the sum he withdrew from the trust account. If there was no dispute, respondent was free to withdraw the $4000. To that end, respondent testified that Ms. Baldew agreed during their lunch meeting to pay $4000 in partial payment. On the other hand, Ms. Baldew testified that she never conceded that respondent was entitled to $4000, but merely offered to settle the dispute for that amount. The hearing committee resolved this conflict

when it found that "no agreement concerning partial payment of respondent's fees was reached" at the March 30, 1989, luncheon meeting.

Although the Board "followed in large part" the hearing committee's factual findings, it rejected the committee's interpretation of the applicable language in DR 9–103(A)(2). The Board concluded that the rule requires that there be a "genuine" dispute between the client and the attorney. In short, the Board concluded that it was not sufficient that the client protested the amount of the fee; any such protest must be grounded in reality. The Board then determined, based on all of the correspondence between the respondent and Ms. Baldew, both before and after [3] the funds were withdrawn, that there was no "genuine" dispute over respondent's entitlement to the $4000. Implicit in the Board's finding no "genuine" dispute is its determination that respondent was legally entitled to at least $4000.

■ The test, however, is not whether, when examining the circumstances objectively, one would conclude that respondent was legally entitled to the amount claimed; rather the test should be whether there was in fact a fee disagreement between the parties concerning respondent's entitlement to the amount withdrawn at the time of withdrawal. The rule is unambiguous: an attorney may not withdraw a portion of the deposited funds when the attorney's right to receive that portion is "disputed" by the client. DR 103(A)(2). There is no requirement that the dispute be "genuine," "serious," or "bona fide," as the Board concluded. Plainly, the word "dispute" means "to argue about; to debate; to question the truth or validity of; [or] to doubt." THE AMERICAN HERITAGE DICTIONARY 380 (1976).

■ We do not doubt, on this record, that respondent had more than earned a fee in excess of $4000, a conclusion later borne out by Ms. Baldew's failure to contest the civil action brought by respondent, which resulted in a default judgment of $12,921.75. The fact that respondent was legally entitled to at least $4000 does not change the nature of the disagreement between Ms. Baldew and respondent, however, because even though respondent, under any objective standard, had rightfully earned the $4000 he withdrew from the account, Ms. Baldew nonetheless, at the moment respondent withdrew that sum, had not acknowledged that he had earned and was entitled to at least that amount. The record shows that at the time respondent withdrew the funds, the parties still very much disagreed regarding respondent's fee: respondent claimed Ms. Baldew had agreed to $4000 as a partial payment to be followed by additional payments; Ms. Baldew said she had agreed to nothing, but was willing to "settle" the dispute for $4000.

■ In support of his claim that he was entitled to at least $4000, respondent points to his two letters of May 16 and May 17, 1989, to Ms. Baldew. He argues that because Ms. Baldew did not respond to or acknowledge receipt [4] of his May 17, 1989, letter, in which he stated that he "will" with-

---

3. As we indicate, *infra*, it is the nature of the understanding, if any, between the parties at the time of the withdrawal that governs the determination whether respondent violated the rule. The Board cited subsequent actions and statements as supportive, although not dispositive, of its conclusion. In our view, at least two of the subsequent matters thus considered by the Board are, at best, ambiguous on this point. First, in a November 11, 1989 letter, Ms. Baldew reiterated that she had offered to settle for $4000, but since respondent never informed her that he accepted the offer she did "not understand how [he] could withdraw U.S. $4000.00" without her consent. In the same correspondence Ms. Baldew offered to pay at the $120 per hour rate for 40 hours, however, she made clear her view that 40 hours was excessive. She also expressed uncertainty

concerning how the $1000 "retainer" was to be allocated.

Second, in her answer to respondent's civil complaint to recover fees, filed in the Superior Court, Ms. Baldew stated that respondent "had worked about 40 hours on her case which means she has to pay ... 40 × $US 120 = 4800." There is no reference, however, to the $1000 retainer previously paid. Therefore, the record is not clear whether this was an acknowledgment by Ms. Baldew that respondent was entitled to receive $4800 or only $3800 ($4800 − $1000).

4. Although Ms. Baldew's later correspondence indicates that she had in fact received the letters, there is nothing in the record showing that respondent knew Ms. Baldew had received his correspondence when he withdrew the funds.

draw the $4000, she effectively gave him permission to do so. We think, under the circumstances presented here, that respondent was not entitled to take Ms. Baldew's silence as an agreement. *See Klingensmith, Inc. v. District of Columbia,* 370 A.2d 1341, 1343 (D.C.1977) (offeror ordinarily lacks the power to make an offeree's silence result in an acceptance of contract) (citing RESTATEMENT (SECOND) OF CONTRACTS § 72).

We note that Ms. Baldew was in Suriname at the time respondent faxed his letter of May 17. She had stated in her May 3 letter that upon receiving an amended statement of fees, she would pay them if, and thus only if, the proposal was agreeable to her. In our view, respondent was on notice that he would be running the risk, under these circumstances, that his client, if asked, would disapprove of his withdrawal of any money from the account in the absence of an affirmative agreement on the amount authorized. Before making any withdrawal, therefore, respondent should have obtained a clear and unequivocal agreement from Ms. Baldew that it was acceptable for him to do so.

Respondent had no written authority from his client to withdraw funds from the trust account. Lacking that authority, respondent could easily have telephoned Ms. Baldew and inquired if she consented to his plan. If she answered in the affirmative, the problem would have been resolved. If she said no, respondent would at least have known what his status was. By withdrawing $4000 without making the call, respondent precluded Ms. Baldew from exercising the second option. He chose not to find out whether she objected, evidently because, if she did object, he would have no basis for withdrawing the money.

Respondent's election not to telephone Ms. Baldew, and to rely instead on a self-serving assumption that Ms. Baldew's silence meant assent, constituted a resort to self-help. Respondent eschewed readily available means of ascertaining whether her consent had in fact been given. But respondent owed a fiduciary duty to Ms. Baldew. His unilateral action under these circumstances was contrary to the Disciplinary Rule.

Respondent argues that Ms. Baldew's failure to protest after he expressed his intention to withdraw the $4000 in the May letter implicated the "admission by silence" exception to the hearsay rule. *See Crain v. Allison,* 443 A.2d 558, 565 (D.C.1982) ("where parties ... are engaged in a situation which would make it improbable for an untrue communication concerning the relationship or transaction to be ignored, the failure to reply to a letter which contains statements which the addressee would normally deny if untrue is receivable in evidence as an admission by silence"). *Crain,* however, does not provide the support respondent claims. The question in *Crain* was whether a party's letter to the other party was receivable in evidence because, under all of the circumstances, the other party's failure to deny a statement in it allegedly constituted an admission by silence. *Id.* In the present case, respondent's letter to Ms. Baldew *was* admitted into evidence, and no party complains of its admission. Assuming, without deciding, that the evidence *permitted* an inference that Ms. Baldew's silence amounted to agreement, we know of no authority which would *compel* the trier of fact to draw it. *See also Holmes v. United States,* 580 A.2d 1259, 1263 (D.C.1990) (admission by silence doctrine applies only where silent party's assent is "unambiguous"). Indeed, the hearing committee expressly found that Ms. Baldew's failure to object did not establish any such agreement on her part.

■ Respondent also claims that on March 30, 1989, Ms. Baldew authorized him to withdraw $4000 in partial payment of his fee. The hearing committee, which heard the testimony both of respondent and of Ms. Baldew, declined to credit this testimony. We are bound by the hearing committee's finding, which was based on an assessment of the parties' credibility.

We are also unpersuaded that, by offering to settle the fee dispute for $4000, Ms. Baldew thereby conceded that respondent was entitled to withdraw that amount. During her correspondence with respondent prior to his withdrawal of the $4000, Ms. Baldew expressed doubt that respondent was entitled to a fee even approximating the amount that he was seeking. In her February 21, and May 3, 1989 letters respectively, Ms. Baldew

stated that she did "not agree with the amount charged," but indicated that she was willing to settle the amount "which is due to [respondent] if such is agreeable to [her]." Thus, her willingness to pay $4000 was no more than an offer of compromise, and it was not an admission of liability for that amount. *Cf. Harrison v. District of Columbia*, 95 A.2d 332, 334 (D.C.1953) ("One is permitted to make an effort to buy his peace without having such effort used against him as an admission of liability"); *Garcia v. Llerena*, 599 A.2d 1138, 1142 (D.C.1991).

Ms. Baldew's position with respect to her offer to settle for $4000 is no different from respondent's position when, in an effort to settle the dispute, he offered to accept a lesser sum, *i.e.*, $10,161 rather than the $12,921.75 that had been billed by him to Ms. Baldew. Respondent's offer to settle for the lesser amount was not a concession on his part that $10,161 was all that was owed him—it was the sum he was willing to accept, just as $4000 was the sum Ms. Baldew was willing to pay, to settle the matter. We know that respondent did not concede entitlement to only $10,161, because when he later brought his legal action against Ms. Baldew, he sought, and received a judgment for, the full amount of $12,921.75 that he always claimed he was owed. In short, the parties were involved in a dispute concerning the amount owed: respondent was willing to accept $10,161 and Ms. Baldew was willing to pay $4000. And, so long as the amount of the fees was in dispute, respondent was barred from withdrawing funds from Ms. Baldew's trust account.

For the reasons stated, we hold that, at the time respondent withdrew the funds from his client's trust account, his entitlement to those funds was in dispute. Accordingly, he violated DR 9–103(A)(2), and we, therefore, remand to permit the Board to recommend an appropriate sanction.[5]

*Case Remanded.*

<hr>

5. The hearing committee recommended a six-month suspension. Our decision on the merits should not be construed as agreeing with that

recommendation, especially in light of the fact, now undisputed, that respondent had earned in excess of $4000.