808 A.2d 1251

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,

v.

Allan J. CULVER, Jr.

No. 32, Sept. Term, 2001.

Court of Appeals of Maryland.

Oct. 10, 2002.

Melvin Hirshman, Bar Counsel and James P. Botluk, Asst. Bar Counsel for the Atty. Grievance Com'n of Maryland, for petitioner.

Byron Warnken, Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

In this attorney disciplinary action, the Attorney Grievance Commission of Maryland, Petitioner, acting through Bar Counsel and at the direction of the Review Board, *see* Maryland Rule 16–709,[1] filed a Petition for Disciplinary Action

---

1. The public charges in this case were filed and pending before this Court prior to 1 July 2001; thus, we refer to the attorney grievance procedural rules in effect prior to 30 June 2001. The then applicable

against Allan J Culver, Jr., Respondent, charging him with violations of Maryland Rules of Professional Conduct ("MRPC") 1.5(c)(Fees) [2] and 1.15(c)(Safekeeping Property), [3] as adopted by Maryland Rule 16–812. Respondent also was charged with violating Maryland Rule 16–607(b)(2) (Commingling of Funds). [4] We referred the case to the Honorable Emory A. Plitt, Jr. of the Circuit Court for Harford County to

rule, 16–709(a), stated that "[c]harges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board." Such filings are now governed by Rule 16–751(a), adopted 30 November 2000, effective 1 July 2001, which provides as follows:

**Commencement of disciplinary or remedial action.**
Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 1.5(c) provides:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. The terms of a contingent fee agreement shall be communicated to the client in writing. The communication shall state the method by which the fee is to be determined, including the percent or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination.

MRPC 1.5(d) is not relevant to this case.

3. MRPC 1.15(c) provides:

When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

4. Rule 16–607(b)(2) provides:

An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

conduct a hearing [5] and to make findings of fact and draw conclusions of law.[6] Judge Plitt concluded from the facts found that the Respondent violated MRPC 1.5(c) and Rule 16–607(2)(b). As to the charge regarding MRPC 1.15(c), he concluded that, on the facts as he found them to be, the rule overlapped with Rule 16–607(b)(2), and that a finding of violation of the latter rule only was more appropriate.

## I.

This case arises out of Respondent's representation of Mr. and Mrs. James D. Blum, III, in a residential landlord-tenant dispute and a subsequent related matter. The Blums initially retained Respondent in September of 1993 to defend them in a rent escrow action brought in the District Court of Maryland by the tenants, the Walkers. The Walkers and Mrs. Blum entered into a written one-year lease on 18 November 1992. According to the record, Mrs. Blum was the sole lessor of the single-family property.[7] On 15 April 1993, the Walkers wrote

---

**5.** Rule 16–709(b) provided:

Charges against an attorney shall be filed on behalf of the Commission in the Court of Appeals. The Court of Appeals by order may direct that the charges be transmitted to and heard in any court and shall designate the judge to hear the charges and the clerk responsible for maintaining the record in the proceedings.

Effective July 1, 2001, the analog new rule is Rule 16-752. Captioned "Order Designating Judge," it provides:

(A) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

**6.** Rule 16–711(a) provided:

Findings. A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties.

Effective July 1, 2001, the applicable rule, with no substantive changes, became Rule 16–757.

**7.** Despite admitting in his Answer to the Petition for Disciplinary Action that he represented both Mr. and Mrs. Blum, Respondent asserted at

to Mrs. Blum and demanded that they be allowed to terminate the lease and vacate the premises. Mrs. Blum refused. Later that same month, the Walkers filed a rent escrow proceeding in the District Court of Maryland. On 10 May 1993, Mrs. Blum, in response, sought repossession of the leasehold premises for the Walkers' alleged failure to pay rent and water and sewage expenses. The Walkers vacated the leased premises in September, allegedly still owing the back rent and water and sewage expenses. The District Court dismissed in November 1993 the rent escrow proceedings filed by the Walkers.

On 29 November 1993, the Blums initiated a suit against the Walkers, and the Walkers' attorney from the rent escrow case, alleging breach of contract and abuse of process in bringing and prosecuting the rent escrow suit. This second suit was settled in January 1998 for $3,500.00 as to the claims against the Walkers. A default judgment was obtained against the Walkers' former attorney.

Culver represented the Blums in both cases involving the Walkers. The Blums originally were represented in the rent escrow matter by other counsel, but, on approximately 8 September 1993, the Blums hired Culver to take over the matter. Although there was no written retainer agreement nor confirmatory writing of the representation received in evidence, it appears from the record that the financial terms of the representation were that Culver was to be paid a flat fee of $750 unless the case ran beyond a specified period of time, at which point billing would be on an hourly basis.[8]

---

the hearing before Judge Plitt that he represented only Mrs. Blum. Judge Plitt found, however, that the evidence persuaded him that Respondent undertook to represent both of the Blums. Respondent specifically stated in his exceptions to this Court that he no longer contests this finding.

8. With the exception of what may be gleaned from Respondent's billing time sheet dated 21 February 1998, there is no clear indication in the record (or any finding by Judge Plitt) as to exactly what hourly rate or rates Mr. Culver charged. This billing time sheet indicates that from 22 August 1995 until 30 April 1997, the Blums were billed at a rate of $150

The litigation ran beyond the agreed period, and Respondent began billing the Blums sporadically. Working from the available bills and the ledger kept by the Respondent, Judge Plitt reconstructed the following financial transactions between Culver and the Blums. Between 16 November 1993 and 12 March 1995, Respondent sent bills to Mrs. Blum on a periodic basis summarizing the tasks performed, the time for each, and the amount due based on an hourly rate. The last bill sent to the Blums by Respondent was 1 August 1995. The ledger maintained by Respondent showed that between 8 September 1993 and 17 July 1995, Respondent was paid by the Blums a net total of $4,891.00, after deducting reimbursement for costs advanced of $323.50. There were no entries on the ledger between 14 September 1994 and the last entry of 17 July 1995. The "trust funds" section of the ledger card contained no entries.

In mid–1995, while the second suit was pending, a telephone conversation occurred between Mr. Blum and Respondent in which Mr. Blum initially informed Respondent that he and his wife wished to discontinue the action against the Walkers as its cost outweighed the potential gain. At the end of this conversation, it was agreed that the litigation and Culver's representation would continue. Culver and the Blums disputed before Judge Plitt, however, what the financial terms of that continued representation were to be. The Blums claimed that Culver agreed to forgive the outstanding balance on their account of $2,618.50, owed as of August 1995, and continue representation in the second suit on a contingency fee basis, with 30% of any recovery going to Culver in full payment of his services. Culver claimed that he only agreed to defer collection of the hourly-driven, outstanding balance until after

an hour, increasing to $165 an hour for December 1997, the final month addressed on this document. The Blums, however, were not receiving regular bills from Mr. Culver during this period, and there is no indication that they were aware of what the hourly rate was before December 1997, or that they were notified of the December increase. Bills prior to this date are unclear as to exactly what Culver's hourly billing rate was. There appear to be differing rates charged for various services rendered.

resolution of the Blums' case against the Walkers and their former attorney, and that he merely offered to change his fee arrangements for services to be rendered prospectively to a contingency fee of 40% of any recovery. Culver's position was that, although a discussion of a change to a contingency fee took place, no agreement was ever reached. In either event, the terms of a contingency fee arrangement never were reduced to writing.

On 30 January 1998, the second suit was settled as to the claims against the Walkers for $3,500.00, paid directly to Respondent by a check payable to "Trust Account of Allan Culver." Respondent deposited the check in his escrow account on 2 February 1998. He sent no written statement to the Blums as to the disposition of the $3,500.00 settlement. After not receiving a satisfactory response from Culver regarding the disposition of the settlement funds, the Blums' requested that an attorney-friend of theirs contact him. In response to that inquiry, Respondent sent the Blums a letter, dated 21 February 1998, informing them that it was his opinion that he was entitled to the entire $3,500.00 of the settlement and moreover, the Blums owed him an additional $516.50 for his services. On the same date, Respondent disbursed to himself from his escrow account the entire $3,500.00. No portion of the $3,500.00 was ever paid to the Blums. Combining the $3,500.00 with the $5,214.50 already paid by the Blums as of 17 July 1995, Respondent received a gross amount of $8,714.50 for his overall legal services, leaving outstanding his claim to an additional $516.50.[9]

Judge Plitt penultimately found that Respondent and the Blums agreed on a contingency fee modification to the fee

---

9. Judge Plitt found that between 8 September 1993 and 17 July 1995 the Blums made total payments to Culver of $5,214.50. Judge Plitt deducted advanced costs as of 17 July 1995 of $323.50 to arrive at a net figure of total payments of $4,891.00. While Judge Plitt did not give an exact accounting of the amount of Culver's total compensation, he did find that by adding the $3,500.00 of the settlement to the $4,891.00 net already paid, the amount paid by the Blums to Culver exceeded the "$7,577.00 plus" claimed by the Blums in their complaint to the Attorney Grievance Commission.

arrangement, but that such agreement was not reduced to writing.

## II.

From these facts, and others we shall discuss *infra,* Judge Plitt concluded, by clear and convincing evidence,[10] that Respondent violated MRPC 1.5(c) and Rule 16–607(b)(2). Respondent filed exceptions with this Court. Regarding Judge Plitt's finding of a modification of the fee agreement from an hourly-driven fee to a contingency fee, Respondent essentially argues that: 1) because there is at least a dispute over the percentage of the contingency fee Judge Plitt should have found that there was no "meeting-of-the-minds" necessary to form a valid modification of the original fee agreement; and 2) there exist alternative interpretations of the facts as found by Judge Plitt which suggest that there never was a modification of the original fee agreement and that, while a change to a contingency fee had been discussed, the parties had not so agreed. The upshot of both arguments is that Respondent's explanation for why the contingency agreement was not reduced to writing as required by MRPC 1.5(c) was that there was no contingency agreement.

## III.

This Court has original jurisdiction over all attorney disciplinary proceedings. *See Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996). The responsibility to make final determinations of an attorney's alleged misconduct is reserved to us. *See* Md. Rule 16–751(d); *Glenn,* 341 Md. at 470, 671 A.2d at 473: *See also Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999). Additionally, as we recently pointed out in *Attorney Grievance Comm'n v. Barneys,* 370 Md. 566, 577, 805 A.2d 1040, 1046 (2002) (citations omitted), "in attorney disci-

---

10. Rule 16–757(b); *Attorney Grievance Comm'n v. Sheridan,* 357 Md. 1, 7, 741 A.2d 1143, 1146 (1999); *Attorney Grievance Comm'n v. Kahn,* 290 Md. 654, 678, 431 A.2d 1336, 1349 (1981).

pline cases, we review the findings of the hearing judge to determine whether they are based on clear and convincing evidence, that the hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous."

■ Respondent's first argument invites us to hold that a modification to an oral contract never can be found where the parties subsequently disagree as to the fee or price term in the alleged modification, as such a dispute would support equally a conclusion that no contract was ever formed due to a failure of the parties to reach the "meeting-of-the-minds" necessary to support the modification. We decline Respondent's invitation to run this circuit with him, and point out that it is well established that a subsequent oral modification of a contract may be found if established by the applicable quantum of evidence. *See Charles Burton Builders, Inc v. L & S Constr. Co.,* 260 Md. 66, 87, 271 A.2d 534 (1970)(preponderance of the evidence in civil claim context); *Seybolt v. Baber,* 203 Md. 20, 27–28, 97 A.2d 907, 910 (1953)(same). In this case the hearing judge found by clear and convincing evidence that in mid–1995 a contingency agreement came into existence between Respondent and his clients. We shall summarize that evidence.

■ Of greatest weight to Judge Plitt were Respondent's own words. After the Blums attorney-friend contacted Respondent about the settlement proceeds from the second suit, Respondent sent the Blums a letter, dated 21 February 1998, in which he stated: "My notes reflect that I agreed to continue on a contingent basis . . . ." The letter continued: "A further review of my file does not reflect that I ever submitted a contingent fee contract to you." Attached to this same letter was a document allegedly supporting Respondent's calculations as to the monies he felt remained due him. An entry on this document, dated 3 May 1996, described the billing arrangement as a contingency. Finally, in a letter of 1 June 1998 to the Assistant Bar Counsel investigating the Blums' complaint, Respondent admitted that he entered into a contin-

gency agreement with the Blums. In a subsequent letter to Assistant Bar Counsel, dated 25 April 1999, Respondent again admitted to the existence of an oral contingency agreement, but that it had not been reduced to writing.

Also relevant to Judge Plitt's finding regarding the contingency fee were Respondent's billing records, or lack thereof. Respondent failed to produce contemporaneously-made time records reflecting an hourly fee arrangement throughout his representation of the Blums. There were no payment entries on Respondent's ledger card after 17 July 1995, despite the fact that the second litigation continued until 30 January 1998. There were no bills sent by Respondent after 15 August 1995. These facts support an inference of a fee agreement change to a contingency agreement, considered together with the previously discussed evidence.

With such evidence in the record, we are unable to conclude that the hearing judge erred in concluding that Respondent violated Rule 1.5(c). Nor is there any rational basis for asserting that the hearing judge's findings in this regard were clearly erroneous. We therefore overrule Respondent's exceptions as to the violation of Rule 1.5(c).

Respondent's argument that he should not have been found to have violated Rule 16–607(b)(2) is equally unpersuasive. Respondent argues that because, in his view, there can be no finding that a contingency fee agreement was ever made, the evidence must support the conclusion that he was engaged on an hourly fee basis, and therefore, by his calculations, was merely removing money from his escrow account to which he was entitled. This argument represents a fundamental lack of understanding of the meaning of Rule 16–607(b)(2). The rule clearly states that "any portion [of the funds] disputed by the client shall remain in the account until the dispute is resolved." As was pointed out by the District of Columbia Court of Appeals when interpreting their version of Rule 16–607:

The test, however, is not whether, when examining the circumstances objectively, one would conclude that respon-

dent was legally entitled to the amount claimed; rather the test should be whether there was in fact a fee disagreement between the parties concerning respondent's entitlement to the amount withdrawn at the time of the withdraw. The rule is unambiguous: an attorney may not withdraw a portion of the deposited funds when the attorney's right to receive that portion is "disputed" by the client.

*In re Haar,* 667 A.2d 1350, 1353 (1995).[11] In the case of Respondent, the hearing judge's recitation of Respondent's testimony in this regard is telling:

Respondent by his own admission did nothing about the contingency fee from the date he deposited it until after getting a 'shot across the bow' from other counsel on Mr. Blum's behalf. Then, instead of contacting the Blums to attempt to resolve the matter, Respondent just kept the entire $3,500.00 and sent the Blums a letter telling them why . . .

Based on the facts as found by Judge Plitt, Respondent, by this conduct, violated Rule 16–607(b)(2). Therefore, we over-rule Respondent's exceptions and hold that the hearing judge's findings are not clearly erroneous.

## VI.

Turning to consideration of the appropriate sanction in this case, Petitioner points out that Respondent previously received a reprimand from this Court for violations of Rules 1.3, 1.4 and 8.4(d). In light of that and the circumstances of the present case, Petitioner recommends that we impose an indefinite suspension here. For his part, Respondent proposes that, were we to overrule his exceptions, we issue a reprimand. In support of this recommendation, he points to his 24 years of law practice (Respondent was admitted in Maryland on 21 June 1978) with only the one prior reprimand.

---

11. *See also Attorney Grievance Comm'n v. Haar,* 347 Md. 124, 699 A.2d 434 (1997).

■ We are mindful that the purpose of the sanction imposed on an attorney in disciplinary proceedings is the same as for the proceedings themselves, which is to protect the public.[12] As we explained in *Attorney Grievance Comm'n v. Garfield,*

> [t]he public interest is served when this Court imposes a sanction which demonstrates to members of this legal profession the type of conduct that will not be tolerated. By imposing such a sanction, this Court fulfills its responsibility to insist upon the maintenance of the integrity of the Bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute. Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules.

369 Md. 85, 98, 797 A.2d 757, 764 (2002)(quoting *Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 428, 795 A.2d 706, 711 (2002)(internal quotations omitted)(quoting *Attorney Grievance Comm'n v. Wallace,* 368 Md. 277, 289, 793 A.2d 535, 542–43 (2002) (citations omitted))). *See also Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 405, 784 A.2d 516, 532–33 (2001); *Attorney Grievance Comm'n v. Zdravkovich,* 362 Md. 1, 31–32, 762 A.2d 950, 966 (2000).

■ That sanctions are important in deterring attorneys from violating the disciplinary rules has been well established by this Court. The decision to issue sanctions must take into

---

**12.** See *Attorney Grievance Comm'n v. Hayes,* 367 Md. 504, 519, 789 A.2d 119, 129 (2002); *Attorney Grievance Comm'n v. Jeter,* 365 Md. 279, 289, 778 A.2d 390, 396 (2001); *Attorney Grievance Comm'n v. Bernstein,* 363 Md. 208, 226, 768 A.2d 607, 616–17 (2001); *Attorney Grievance Comm'n v. Koven,* 361 Md. 337, 343, 761 A.2d 881, 884 (2000); *Attorney Grievance Comm'n v. Tolar,* 357 Md. 569, 584, 745 A.2d 1045, 1053 (2000); *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 446, 635 A.2d 1315–1318 (1994); *Attorney Grievance Comm'n v. Protokowicz,* 329 Md. 252, 262, 619 A.2d 100, 105 (1993); *Attorney Grievance Comm'n v. Hamby,* 322 Md. 606, 611, 589 A.2d 53, 56 (1991); *Attorney Grievance Comm'n v. Myers,* 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Attorney Grievance Comm'n v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 359 (1984); *Attorney Grievance Comm'n v. Montgomery,* 296 Md. 113, 119, 460 A.2d 597, 600 (1983).

account the facts and circumstances of the case, *Attorney Grievance Comm'n v. Tolar*, 357 Md. 569, 585, 745 A.2d 1045, 1053 (2000), including "the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997).[13] Also relevant is the attorney's prior grievance history, whether there were prior disciplinary proceedings, the nature of the misconduct involved in those proceedings, and the nature of any sanctions imposed, as well as any facts in mitigation. *Attorney Grievance Comm'n v. Franz*, 355 Md. 752, 762–63, 736 A.2d 339, 344 (1999); *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 362, 347 A.2d 556, 561 (1975). The attorney's candor and remorse for the conduct, *Attorney Grievance Comm'n v. Hayes*, 367 Md. 504, 520, 789 A.2d 119, 129 (2002); *Attorney Grievance Comm'n v. Wyatt*, 323 Md. 36, 38, 591 A.2d 467, 468 (1991), and the likelihood of the conduct being repeated are also relevant factors. *Attorney Grievance Comm'n v. Freedman*, 285 Md. 298, 300, 402 A.2d 75, 76 (1979).[14]

█ In determining the appropriate sanction in the present case, we note at the outset that the Respondent was not charged with a violation of MRPC 8.4, or more specifically MRPC 8.4(c).[15] In addition to a violation of Rule 1.5(c),

---

13.  *See also Attorney Grievance Comm'n v. Pennington*, 355 Md. 61, 78, 733 A.2d 1029, 1037–38 (1999); *Attorney Grievance Comm'n v. Milliken*, 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998); *Attorney Grievance Comm'n v. Montgomery*, 318 Md. 154, 165, 567 A.2d 112, 117 (1989).

14.  Additionally, as we said in *Sheridan*, 357 Md. at 28, 741 A.2d at 1158 (citing *Glenn*, 341 Md. 448, 484, 671 A.2d 463, 480 (1996)(citing Standard 3.0 of the ABA Standards for imposing Lawyer Sanctions, *reprinted in Selected Statutes, Rules and Standards on the Legal Profession*, 300 (1987))), it is often helpful to refer to the ABA standards. These standards set forth four questions for consideration when determining the appropriate sanction in attorney discipline matters: 1) What is the nature of the ethical duty violated?; 2) What was the lawyer's mental state?; 3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and 4) Are there any aggravating or mitigating circumstances?

15.  MRPC 8.4 Provides:

Respondent was charged with violations of Rule 1.15(c) and Rule 16–607(b)(2). While we do not agree necessarily with Judge Plitt's apparent belief that MRPC 1.15(c) and Rule 16–607(b)(2) could not both apply to the proven conduct in the present case, we note that he found that the provisions of these rules essentially overlap on the facts of this case. He concluded that Respondent's conduct violated Rule 16–607(b)(2), but eschewed finding a violation also of MRPC 1.15(c). These distinctions are noted because they become relevant to our placement of Culver's sanction along the sanctions continuum charted by our cases.[16]

In the case of *Attorney Grievance Comm'n v. Powell*, 369 Md. 462, 800 A.2d 782 (2002), the respondent was found to have violated MRPC Rules 1.15(a), 8.1(a), and 8.4(c), as well as Rule 16–607. Powell also was found to have failed to cooperate with Bar Counsel. He previously had been suspended indefinitely for misappropriation of client funds. In resolving that the appropriate sanction was disbarment, we reasoned that:

> It has long been the position of this Court that disbarment is the appropriate sanction for intentional dishonest conduct. *See Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001). In cases warranting disbarment, such as those involving intentional dishonesty, fraud,

---

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply an ability to influence improperly a government agency or official; or
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

**16.** *See also In re Haar*, 698 A.2d 412, 416–18 (D.C.1997); *Attorney Grievance Comm'n v. Haar*, 347 Md. 124, 699 A.2d 434 (1997).

misappropriation and the like, we will not accept as compelling extenuating circumstances "anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC." *Id.* at 413–14, 773 A.2d at 485. *Powell,* 369 Md. at 475, 800 A.2d at 789–90 (emphasis in original).[17] Similarly, in *Attorney Grievance Comm'n v. Briscoe,* 357 Md. 554, 745 A.2d 1037 (2000), we found disbarment to be the appropriate sanction where, in addition to violations not present in Culver's case, including continuing to practice law when unauthorized to do so, "respondent violated MRPC 1.5(c) in . . . that respondent did not describe his contingency fees in writing, MRPC 1.15, in regard to mishandling the settlement checks, and MRPC 8.1(b), in respect to his failure to cooperate with petitioner." *Briscoe,* 357 Md. at 565, 745 A.2d at 1043.

██ It is not the finding of effective dishonesty, fraud or misappropriation, however, that is essential to our determination whether disbarment is the appropriate sanction, but rather the attorney's intent.[18] "The gravity of misconduct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct." *Briscoe,* 357 Md. at 568, 745 A.2d at 1044 (citing *Attorney Grievance Comm'n v. Milliken,* 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998)(citing *Flint's Case,* 133 N.H. 685, 582 A.2d 291, 293 (1990)). We elaborated on this point in *Hayes,* where we stated:

"That the effect of the respondent's action may be to misappropriate funds belonging to another, as in *Attorney Griev. Comm'n v. Bernstein,* 363 Md. 208, 221, 768 A.2d 607,

17. *See also Sheridan,* 357 Md. at 27–28, 741 A.2d at 1157–58.

18. *See Hayes,* 367 Md. at 516–18, 789 A.2d at 126–28; *Bernstein,* 363 Md. at 228, 768 A.2d at 618; *Attorney Grievance v. Tomaino,* 362 Md. 483, 498, 765 A.2d 653, 661–62 (2001); *Sheridan,* 357 Md. at 29, 741 A.2d at 1158; *Awuah,* 346 Md. at 435, 697 A.2d. at 454.

614 (2001), does not mean that the actions were taken with the intent to misappropriate. Similarly, this is the case with respect to the finding of no personal enrichment and the respondent's knowledge of the Rules of Professional Conduct. Clearly, one who acts with deliberation and calculation, fully cognizant of the situation and, therefore, fully intending the result that is achieved is more culpable than one who, though doing the same act, does so unintentionally, negligently or without full appreciation of the consequences.

367 Md. at 514, 789 A.2d at 127 (quoting *Jeter*, 365 Md. at 289, 778 A.2d at 395).[19]

Thus, in *Sheridan*, we held that indefinite suspension with the right to reapply for reinstatement after one year was the appropriate sanction where respondent had violated 1.15(a), (b), (c) and 8.4(c). Because Sheridan's conduct was found by the hearing judge not to be intentionally fraudulent, 357 Md. at 29–30, 741 A.2d at 1158–59, we concluded that respondent's conduct did not warrant disbarment. *Sheridan*, 357 Md. at 35–36, 741 A.2d at 1161–62. *Sheridan* is distinguishable from the case sub judice based on the finding in *Sheridan* of a violation of 8.4(c),[20] *Sheridan*, 357 Md. at 29–31, 741 A.2d at

---

**19.** *See also* dissenting opinion of Judge Wilner in *Attorney Grievance Comm'n v. Bernstein*, 363 Md. 208, 231, 768 A.2d 607, 619–20 (2001)

The co-mingling of client and attorney funds always creates the potential for misappropriation, even when there is no intent to misappropriate. A misappropriation necessarily occurs whenever the attorney withdraws funds from a co-mingled account for his or her own purpose and, as a result, leaves the account insufficient to cover all client funds, and such a misappropriation is never innocent. It is not necessarily wilful, however, or for the conscious purpose of unlawfully taking funds held in trust for another.

*See also Attorney Grievance Comm'n v. Adams*, 349 Md. 86, 98–99, 706 A.2d 1080, 1086 (1998)(holding that a 30–day suspension is the appropriate sanction where the respondent did not intentionally misuse the funds of the client); *Attorney Grievance Comm'n v. Drew*, 341 Md. 139, 154, 669 A.2d 1344, 1351 (1996)(holding that absent clear and convincing evidence showing intentional misappropriation, the failure to properly keep property in an escrow account warranted suspension as opposed to disbarment).

**20.** *See* n. 15 at page 278, *supra.*

1158–59, a serious violation, for which the Respondent in the case before us was not charged.

Similarly, in *Jeter*, we held that the appropriate sanction was indefinite suspension with the right to reapply for admission no earlier than six months, 365 Md. at 293–94, 778 A.2d at 398. We found this to be the appropriate sanction under the circumstances, despite noting that the respondent had been found to have committed many of the same acts as had resulted in disbarment in *Briscoe* such as "failing to have a written contingency agreement, failure to make appropriate disbursements from client settlements, failure to maintain a trust account and failure to product records requested by an Inquiry Panel." 365 Md. at 291, 778 A.2d at 397. The primary distinction between the sanctions imposed in *Briscoe* and *Jeter* appears to be that in *Jeter* there was no intent to defraud, and Jeter was found to be remorseful for the impacts of his conduct, findings not made in *Briscoe*. *Jeter*, 365 Md. at 292–93, 778 A.2d at 397–98.[21]

In *Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 802 A.2d 1014 (2002) we held that indefinite suspension with the right to seek reinstatement no earlier than 90 days was the appropriate sanction where respondent was found to have violated MRPC 1.15(a) and (c) and 8.4(a), as well as Rules 16–607(a) and 16–609, in connection with his trust accounts. In so holding, we noted that there was no clear and convincing evidence of dishonesty, fraud, deceit, or misrepresentation on the part of the respondent, and that there was no evidence of misappropriation or actual financial loss to any of respondent's clients. As a result, we sustained the hearing judge's conclu-

---

21. *Jeter* is distinguished from the case sub judice by the fact that in *Jeter* respondent was found to have failed even to maintain escrow accounts. In *Sheridan*, 357 Md. at 31, 741 A.2d at 1159, we stressed that "[w]e cannot understate the importance of holding funds in escrow in accordance with Rule 1.15 and how the Rule reinforces the public's confidence in our legal system. Escrow accounts serve as sanctuary for client funds from the attorney's creditors. . . . They also provide peace of mind and order to disputing parties, assuring that no one party will exercise control over funds until an independent resolution of the dispute."

sion that the respondent had not violated MRPC 8.4(c). *Di-Cicco*, 369 Md. at 686, 802 A.2d at 1027. We also sustained, however, the hearing judge's finding of a violation of MRPC 8.4(a),[22] which distinguishes *DiCicco* from the case sub judice.

Finally, in the much older case of *Attorney Grievance Comm'n v. McIntire*, 286 Md. 87, 405 A.2d 273 (1979), the respondent was charged with a violation of Maryland Disciplinary Rule 9–102, the equivalent rule of the time to the current Rule 16–607. *McIntire* involved a fee dispute in some respects similar to the case sub judice, as respondent there paid to himself funds he felt due him despite knowing that the bill in question was in dispute. In *McIntire*, however, the funds ultimately were returned to the client prior to the conclusion of the grievance proceedings, and respondent had no prior record of disciplinary proceedings. We concluded that, as the respondent's conduct did not involve intentional wrongdoing, deceit, or dishonesty, the appropriate sanction was a reprimand. *McIntire*, 286 Md. at 96, 405 A.2d at 278.

Weighting the various sanctioning factors and our relevant cases, we conclude that the appropriate sanction in this case falls between the range represented in *McIntire* and *DiCicco*. In comparing Culver's case with *McIntire*, we note that the charges in both stem from single incidents. In *McIntire*, however, the only charge involved misappropriation of funds, the monies were repaid, and there was no prior history of disciplinary action against the respondent. Here, the monies have not been returned to the clients or the trust account, there is the additional violation of the failure to put the contingency agreement into writing, and Respondent previously has been reprimanded for violations of Rules 1.3, 1.4 and 8.4(d).

A comparison with *DiCicco*, however, suggests that a lesser sanction than was applied in that case is appropriate here.

---

**22.** MRPC 8.4(a) states that: "It is misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

*DiCicco* involved numerous clients and multiple incidences of discrepancies involving his client trust account. Furthermore, while DiCicco was found not to have violated Rule 8.4(c), a violation of Rule 8.4(a) was sustained. We note that Culver's case involves only a single incident, and no violation of Rule 8.4 was charged.

Considering all of the circumstances, we conclude that the appropriate sanction in this matter is an indefinite suspension from the practice of law with the right to seek reinstatement after 30 days from the effective date of this opinion and after payment to the Blums of the $3,500 from the settlement of the second litigation. *See Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 397–98, 794 A.2d 92, 106 (2002).

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C). JUDGMENT IS ENTERED IN THIS SUM IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST ALLAN J. CULVER, JR.; RESPONDENT'S SUSPENSION SHALL COMMENCE THIRTY DAYS FROM THE FILING OF THIS OPINION.